# District Court of the Navajo Nation
Judicial District of Shiprock, New Mexico

**Fred Johnson, Plaintiff,**
v.
**Helen Ann Nez Yellowman, Defendant.**
**Decided July 31, 1997**

## ORDER

Order denying Summary Judgment, dismissing Mr. Fred Johnson's Complaint, dismissing Mrs. Yellowman's Counterclaim without prejudice, and entering Declaratory Judgment in favor of Mrs. Yellowman.

Judge Lorene Ferguson presiding.

This matter was first brought before this Court by Plaintiff, Fred Johnson, who filed a complaint requesting this Court to authorize the termination of the Defendant's grazing permit. The Plaintiff further requests that upon termination of the grazing permit, the grazing permit be reissued in the Plaintiff's name. The Plaintiff, in his complaint, alleges the following:

1. Defendant, Helen Yellowman, was raised by her maternal aunt, Ason Clauschee, C#18,922, and Little Wagon, C#18,921, and that on or about December 9, 1959, before the District 12 Grazing Committee meeting, Little Wagon gave his permit to the Defendant who was reassigned the permit, No. 12-1843, for 74 Sheep Units.

2. When Defendant's maternal aunt died, Defendant returned to the Round Rock/Rock Point area (within District 9) to live with her Mother.

3. In 1963/1964, Defendant moved to Blanding, Utah, where she has been residing up to the present time.

4. The Plaintiff, Fred Johnson, has no grazing permit. However, his wife has inherited a grazing permit from her clan as separate property.

5. The Defendant does not use the grazing permit, nor does she own any livestock within District 12 or on McCracken Mesa and she has abandoned the land use area.

On May 24, 1994, the Defendant, Helen Yellowman, answered the Plaintiff's complaint and filed a Counterclaim alleging that Mr. Johnson (the counter-respondent), has harmed the counter-claimant by denying her use and to enjoy the grazing area. Furthermore, Yellowman counter-alleged that Mr. Johnson is trespassing and interfering with her possessor interests (grazing permit). In her counterclaim, Mrs. Yellowman is asking for damages of $50,000 and $700.00 for legal fees. She is further requesting this Court to enjoin Mr. Johnson, the counter-respondent, from interfering with her use of the grazing permit.

Mr. Johnson responded to the Counterclaim by raising a series of affirmative defenses and asking this Court to dismiss the Counterclaim.

On July 21, 1994, a pre-trial conference was held. At that time, this Court ordered that Mrs. Yellowman file any discoveries within ten days. This Court further ordered that a final pre-trial conference be scheduled upon the filing of the interrogatories on July 31, 1994.

On January 20, 1995, Mr. Johnson filed a Motion for Summary Judgment, including a Declaratory Judgment that the Defendant's grazing permit be terminated and reissued to him. This Court addressed the Motion for Summary Judgment on February 1, 1995. In this case, Mr. Johnson (the plaintiff here and counter-respondent below) first requests this Court to terminate the Defendant's, Mrs. Yellowman's, grazing permit. Second, he requests that the "terminated" permit be transferred and reissued to him.

Mr. Johnson, the Plaintiff, argues that this Court can terminate the grazing rights of the Defendant, Mrs. Yellowman. He cites 3 N.T.C. Section 783, specifically the Handbook Notes following the section. The Notes read:

> Grazing permits are terminated only by District Grazing Committee recommendation through transfer agreement and by Tribal Court through judgment orders. In either case new grazing permits are issued by the Subagency Superintendent to other eligible permittees as recommended by the District Grazing Committee or the Tribal Courts.

Thus, the Grazing Committee's authority to terminate grazing permits is limited to those permits which were transferred by agreement. Although the Notes do not extend such limitation to the courts, 3 N.T.C. section 708(d) does place limitations on the court's responsibilities. Here, as basis for his Motion for Summary Judgment, the Plaintiff argues that the District 12 Grazing Committee passed a resolution on March 11, 1981, stating that Helen Yellowman is not a lawful permittee to the land and directing Mrs. Yellowman to remove her property and construction off of the land. In addition, the Plaintiff submitted the resolution passed on September 21, 1983, in which he says the District Grazing Committee recommended that Fred Johnson and Mary Johnson be considered "bonafide livestock owners." Plaintiff argues that the 1983 resolution made it clear that Mary Johnson had grazing permit No. 12-1805 for 75 sheep units and that Helen Yellowman had no claim over the area in dispute with Fred Johnson.

The Plaintiff, Mr. Johnson, is asking this Court to recognize that these resolutions constitute termination of the grazing permit in Yellowman's name. Finally, the Plaintiff is requesting that this Court declare, also by Summary Judgment, that the permit be given to Fred Johnson.

## TERMINATION OF GRAZING PERMIT

As indicated above, the Grazing Committee does not have authority to terminate grazing permits which are not transfer agreements. The Grazing Committee

resolutions relied upon do not give basis to this Court to issue a Summary Judgment, as requested by the Plaintiff, let alone a Declaratory Judgment terminating the grazing permit. The resolutions were passed on March 11, 1981 and September 21, 1983 [neither have resolution numbers] and are subject to 3 N.T.C. Section 878. This section makes it clear that the Grazing Committee is not authorized to settle land disputes.

In *In Re: Joe Customary Use Area*, 6 Nav. R. 177, 179 (1990), the Navajo Supreme Court stated:

> The law is clear - a district grazing committee has no authority to decide a land dispute. Its [Grazing Committee] only responsibility is to serve as a mediator in a land dispute in an attempt to have the parties agree to a mutual settlement. A district grazing committee is not to act as a judge or jury; a role that requires a decision.

On March 11, 1981, the District Grazing Committee clearly attempted to make decisions regarding Mr. Johnson's claims, as well as those raised by Mrs. Yellowman. Likewise, the September 21, 1983 Resolution attempted to do the same. Such actions are contrary to 3 N.T.C. Section 878. Therefore, by attempting to settle land disputes, these resolutions are outside their scope of authority. As such, this Court cannot base its decision on these resolutions to support either a Summary Judgment or a Declaratory Judgment.

## TRANSFER TO MR. JOHNSON

The Plaintiff is requesting that upon the termination of Mrs. Yellowman's grazing permit, this Court transfer the terminated grazing permit to him. However, it cannot be said that the Grazing Committee, in the two resolutions cited above, terminated the grazing permit of Mrs. Yellowman. Nor did the two resolutions recommend that Mrs. Yellowman's permit be transferred to Mr. Johnson.

The Grazing Committee is authorized to terminate permits only when there are transfer agreements. No such agreement exists here. New permits can be issued by the Subagency Superintendent, or his counterpart, to other eligible permittees pursuant to Grazing Committee recommendations. New grazing permits can also be reissued by court orders in matters of divorce, separation, and death, or in threatened family disruptions. However, neither the Grazing Committee, the Subagency Superintendent, nor the courts can disregard the rights of Mrs. Yellowman by terminating her permit without due process. (Due process is further interpreted to include purchase and/or negotiation, as discussed below. *See infra*, p. 9).

Here, the resolutions cited above do not address a transfer of Mrs. Yellowman's permit to the Plaintiff. As such, this Court will not read any transfer into the resolutions, where no such language exists in the resolutions as submitted.

Mrs. Yellowman has a grazing permit which was issued to her on January 27,

1960, by a transfer agreement which occurred on December 9, 1959. This permit was transferred from Little Wagon.

The Handbook Notes following 3 N.T.C. Section 784 clearly state:

> (2) Before any grazing permit transfers will be approved, the grantee must explain his proposed plan of operation to the satisfaction of the District Grazing Committee. If the grantee plans to operate his livestock in an area different from that used by the grantee, the District Grazing Committee must define the use area of the grantee on the back of all copies of the transfer agreement and the grantee and Chairman or Vice Chairman of the District Grazing Committee must sign the grazing use statement. The District Grazing Committee must make certain that the grantee has sufficient range area not in conflict with other range users before recommending approval of any grazing permit transfer.

No court should second guess official actions of any governing body, unless contrary to law, here existing Navajo law. Here, the District Grazing Committee was responsible for recommending the grazing permit transfer from Little Wagon to Helen Yellowman, a niece by marriage whom he helped raise. The fact that Helen Yellowman was originally issued the grazing permit makes the following two presumptions clear. First, Helen Yellowman is presumed to have explained her plan of operation, which did not include plans to operate livestock in any area different from that used by Little Wagon. Thus, she is presumed to have access, by means of the grazing permit, to the area previously used by Little Wagon. Second, it must also be presumed that at the time the permit transfer (from Little Wagon to Helen Yellowman) went before the District Grazing Committee in 1959-1960 for Committee approval, Mrs. Yellowman had sufficient range area not in conflict with other range users.

The Navajo Nation Council, by passing Resolution No. CJ-3-56 on January 27, 1956, delegated certain powers to the District Grazing Committee and, what was then the Central Grazing committee. As such, the 1960 decision to transfer the grazing permit from Little Wagon to Mrs. Yellowman is presumed to be valid and proper. Notwithstanding this, the District Grazing Committee in 1981 and 1983 was uncertain as to whether Mrs. Yellowman was indeed a valid permit holder. They were also uncertain whether her grazing permit provided a means of access to the grazing area previously held by Little Wagon.

In *Benally v. Gorman*, 5 Nav. R. 272 (W. R. Dist. Crt. 1987), the District Court of Window Rock addressed the issue of whether the conflicting actions of two Committees, existing at different times, can both be considered valid and proper. On November 13, 1986, the then existing Advisory Committee approved amendments to the Navajo Education and Scholarship Foundation (NESF), eliminating the need for Advisory Committee approval of future amendments to the NESF Articles of Incorporation. The Committee also authorized the NESF Board of Trustees to amend the Articles in the future and to file the amended Articles with the Commerce Department. This Advisory Committee created the

NESF as a non-profit private corporation by passing ACN-183-86.

On February 25, 1987, a new Advisory Committee, passed a resolution which attempted to reestablish the NESF as an entity of the Navajo Nation, rescinding ACN-183-86 and further declaring the NESF Articles of Incorporation as null and void. Thereafter, a new NESF Board was established whose members were different from those of the previously created board which was created as a non-profit corporation. Thus, two NESF Board of Trustees existed, each proclaiming to be the valid Board.

The Court reviewed the matter in light of the presumption that legislative acts are proper and legal. In doing so, the Court defined the word presumption as a thing "accepted as true or proven unless that presumption is rebutted by evidence to the contrary." *Id.* at 275. A factor in determining whether an act is proper and legal is whether the legislative action is rationally related to a legitimate governmental purpose.

The Court also discussed a second presumption that legislators act from proper motives.

> If the legislative body did a proper and legal act, the court will not examine the motive of the legislators. Motives will be examined only to the extent needed to determine if the legislative action should be invalidated on grounds of fraud and bad faith.

> A government consists of at least three functions: determination of principles and policies of the society being governed; execution of those policies through the instruments of government; and resolution of questions and disputes arising under the principle and policies of the society.

> The formulation of principles and policies should be done as close to the people as possible. In the United States this usually means that the legislative bodies, whose delegates, are representatives of the people. The reason for this is that no government can exist indefinitely without the support and voluntary obedience of a majority of the people. *Benally v. Gorman*, 5 Nav. R. at 275.

With this, the District Court explained that the Navajo Tribal Council is the governing body of the Navajo Nation. Because the tribal government has become so complex, further authority was appropriately delegated to administrative agencies and subcommittees, such as we have here.

Where there is a replacement of the governing body (such as by election), the actions of the replaced body remain valid and intact and must be respected and upheld, unless their actions are inconsistent with Navajo law. Here, the Grazing Law, codified at 3 N.T.C. section 702, *et seq.*, was passed on January 22, 1956 by the Navajo Tribal Council by Resolution No. CJ-3-56, providing the District Grazing Committee, and other subcommittees, specific and limited authority.

Actions by these delegated subcommittees must be rationally related to legitimate governmental purposes. Here, the legitimate governmental purpose is to uphold governing body actions consistent with the grazing laws. Clearly, it is in the interest of the Navajo government if Navajo governmental actions and

Navajo laws are upheld. The actions of the previous District Grazing Committees are valid and proper when they are consistent with Navajo grazing laws, which have the legitimate governmental purpose of preserving range land and resolving disputes consistent with the authority granted. However, it should be remembered that there is no authority granted to the District Grazing Committee to settle land disputes. *See,* 3 N.T.C. Section 878.

The Navajo Government has a policy to preserve the forage, land, and water resources of the Navajo Reservation and to build up those resources where they have deteriorated. 3 N.T.C. Section 703(1). In line with that policy, the 1957 Handbook Notes state:

> In order that range areas now low in productivity because of drought or continued heavy grazing use may recover, stockman in those areas should not be encouraged to stock to their permitted number. Stockman who wish to operate with full permitted numbers should be encouraged to graze their livestock, at least seasonally, in underused areas where new water developments have been made.... Where range feed is in good condition and used lighter than proper, stockman should be encouraged to fill their grazing permits with productive livestock best suited to the kinds of range feed available. Encourage the grazing of cattle in grassland areas and sheep in areas with good amounts of shrubs. Permittees with few or no livestock will not be allowed to hold indefinitely and not use good range areas. Such unused permits should be made available for purchase by others who would make beneficial use of the Tribal range area associated with the unused grazing permit.

1957 Navajo Reservation Grazing Handbook, pp. 19-20.

This is interpreted by this Court as protecting the property rights of the permit holders. This includes determining what Due Process rights Mrs. Yellowman has. Here, Mrs. Yellowman has a right, via her grazing permit, to use land which Little Wagon previously used. Provided that the area is good range area and is unused, then purchase of the permit would be encouraged. If Mrs. Yellowman's permit is to be transferred to another person, not necessarily Mr. Johnson, it would have to have been properly executed, by proper transfer agreement, by an agreement for purchase, or by negotiability of those involved within the respective districts to be acted upon by the District Grazing Committee.

What, thus far, has transpired is a far cry from "negotiability" [to give equivalent value for; to communicate or confer with another as to arrive at the settlement of some matter - meet with another so as to arrive through discussion at some kind of agreement or compromise about something]. By all indications, it appears that Mrs. Yellowman was seeking homesite leases, which could very well serve as a basis for negotiations. If, however, Mrs. Yellowman wished to move her stock upon the area covered by the grazing permit, then she does have a right to do so in accordance with the grazing laws.

This Court recognizes the Navajo Nation Land Development Office as the proper agency to assist Mrs. Yellowman in identifying the land boundaries which

Little Wagon used before he transferred the permit to her. This Court also recognizes the Land Administration Office as the proper agency to identify the area to which Mr. Johnson and his wife have grazing permits, to ascertain the number of livestock owned by Mr. Johnson and to ascertain whether Mrs. Yellowman and Mr. Johnson have use to overlapping areas. Mrs. Yellowman, as owner of the grazing permit, is allowed to graze her livestock in the area on which Little Wagon previously grazed his livestock.

Mr. Johnson, the Plaintiff, wants the Court to terminate Mrs. Yellowman's permit on the ground that she abandoned the grazing area. However, there is no such standard. Even if there was, there is sufficient evidence that she did not abandon the grazing area, but rather was kept from using her grazing permit by the Plaintiff and other community members.

## CONCLUSION

This Court denies Mr. Johnson's request for Summary Judgment, as well as his request for Declaratory Judgment terminating Helen Yellowman's permit and transferring it to Mr. Johnson. Rather, this Court shall enter a Declaratory Judgment finding that Mrs. Yellowman is a valid permit holder with rights to use land previously used by Little Wagon.

The Plaintiff, by having filed a Motion for Summary Judgment, in effect argues the merits of his case. His claims are based upon the Grazing Committee Resolutions dated September 21, 1983 and March 11, 1981. The Court finds those resolutions are of no effect since they are outside the scope of authority granted by the Navajo Nation Council to the District Grazing Committee.

Because this motion is one for Summary Judgment, this Court is presented with the option of either accepting Mr. Johnson's argument as presented, thereby entering findings and a judgment for him, or rejecting his argument, thereby disposing of his case. This Court, in disagreeing with Mr. Johnson, has substantial legal grounds to dismiss his complaint treating it like a failure to state a claim. Such treatment was invited by Mr. Johnson himself by his request for a Summary Judgment.

> The motion for Summary Judgment is like a motion to dismiss for failure to state a claim in that it invites the court to consider substantive legal grounds for dismissing the complaint without waiting for a trial.

James and Hazard, *Civil Procedure*, 2nd ed., 149 (1977).

Finally, this Court must address the claims filed by Mrs. Yellowman, the Respondent, alleging the following:

1. Mr. Johnson intentionally harmed Mrs. Yellowman by denying her family enjoyment of the grazing area.

2. Mr. Johnson is trespassing.

3. Mr. Johnson is interfering with Mrs. Yellowman's right to graze, by virture of her grazing permit.

4. Mr. Johnson has intermeddled with Mrs. Yellowman's grazing use area by threatening and preventing her from moving back to area 0062.

Mrs. Yellowman is requesting $50,000 damages for mental anguish and interference with her possessor interest. She is also requesting a Permanent Restraining Order and legal expenses of $700.00.

Pursuant to 3 N.N.C. Section 710, this Court will forego addressing the counterclaim filed by Mrs. Yellowman. This section, while granting jurisdiction to tribal courts, supports out of court settlements. 3 N.N.C. Section 710. Refusal of this Court to proceed with the trespass action at this stage does not preclude the Defendant (the counter-claimant), Mrs. Yellowman, from filing a petition with the Court in the future, should all else fail.